UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SAMANTHA WORLEY AS
PARENT AND NATURAL
GUARDIAN OF N.H., An
Infant Under the Age Of
Eighteen

**Civil Complaint**

*Plaintiff,*

vs.

**eCivil Action No.:** 1:25-cv-1342 (MAD/MJK)

WAL-MART STORES EAST, INC d/b/a
WAL-MART, INC.,

WAL-MART, INC.,

WALMART SUPERCENTER #2097

HORIZON GROUP USA, INC.

*Defendants.*

---

The Plaintiff, Samantha Worley as Parent and Natural Guardian of N.H., An Infant Under the Age of Eighteen, by and through her attorneys, Richmond Vona, LLC, as for her Complaint against Defendants, herein states as follows:

**INTRODUCTION**

1.     This is a products liability action brought by Plaintiff a citizen of North Carolina, against Defendants Wal-Mart, Inc., Walmart Supercenter #2097, and Wal-Mart Stores East, Inc., (collectively, "Wal-Mart Defendants"), and Horizon Group USA, Inc. for injuries sustained on July 23, 2024, in Columbia County, New York.

2.     Plaintiff's injuries were caused by a defective product sold by the Wal-Mart Defendants at their store located at 460 Fairview Avenue, Hudson, New York, distributed, designed and/or manufactured by Horizon Group USA, Inc.

1

3.      The Wal-Mart Defendants, Delaware corporations with their principal place of business in Bentonville, Arkansas, distributed and/or sold the defective product in New York, where it caused Plaintiff's injuries.

4.      Defendant Horizon Group USA, Inc., a New Jersey corporation with its principal place of business in Warren, New Jersey, designed, manufactured and/or distributed the defective product to the Wal-Mart Defendants for sale in New York.

5.      Plaintiff seeks compensatory damages for medical expenses, pain and suffering, and other losses, as well as punitive damages for Defendants' reckless disregard for consumer safety, exceeding $75,000.

6.      This Court has jurisdiction under 28 U.S.C. § 1332(a) due to complete diversity of citizenship and an amount in controversy exceeding $75,000, exclusive of interest and costs.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in Columbia County, New York.

8.      Plaintiff brings claims for strict products liability, negligence, and breach of warranty under New York law, seeking to hold Defendants accountable for their roles in causing Plaintiff's injuries.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship.

10.     Plaintiff N.H. is a citizen of North Carolina, domiciled in Wendell, North Carolina.

11.     Defendant Wal-Mart, Inc. is a Delaware corporation with its principal place of business in Bentonville, Arkansas.

12.     Defendant Wal-Mart Stores East, Inc. is a Delaware corporation with its principal place of business in Wilmington Delaware.

13.     Walmart Supercenter #2097 is a retail store located at 460 Fairview Avenue, Hudson, New York, operated by Wal-Mart, Inc. or Wal-Mart Stores East, Inc. It is not a separately incorporated entity but is named as part of the Wal-Mart corporate structure for purposes of this action.

14.     Defendant Horizon Group USA, Inc. is a New Jersey corporation with its principal place of business in Warren, New Jersey located at 45 Technology Drive, Warren, New Jersey 07059.

15.     No defendant is a citizen of North Carolina, ensuring complete diversity of citizenship.

16.     The amount in controversy exceeds $75,000.

17.     Damages stem from Plaintiff's severe burn injuries, including medical expenses, and pain and suffering.

18.     This Court has personal jurisdiction over Defendants Wal-Mart, Inc., Wal-Mart Stores East, Inc., and Walmart Supercenter #2097 (collectively, "Wal-Mart Defendants") because they have continuous and systematic contacts with New York.

19.     The Wal-Mart Defendants operate numerous retail stores across New York, including the store at 460 Fairview Avenue, Hudson, New York, in Columbia County, where they sold the defective product that caused Plaintiff's injuries.

20.     These contacts establish specific jurisdiction, as Plaintiff's claims arise from the sale of the defective product in New York, and general jurisdiction due to their extensive operations in the state, satisfying due process (*International Shoe Co. v. Washington*, 326 U.S. 310

3

(1945); *Daimler AG v. Bauman*, 571 U.S. 117 (2014)).

21.     This Court has personal jurisdiction over Defendant Horizon Group USA, Inc. because it designed and distributed the defective product to the Wal-Mart Defendants for sale in New York.

22.     Horizon Group USA, Inc. expected or knew the product would be sold in New York, including in Columbia County, where it caused Plaintiff's injuries.

23.     Horizon Group USA, Inc. derives revenue from interstate commerce and reasonably expected its product to have consequences in New York, establishing specific jurisdiction under the stream of commerce theory (*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)).

24.     New York has a strong interest in regulating defective products sold and causing injury within its borders.

25.     Plaintiff has a significant interest in obtaining relief in the forum where the injury occurred.

26.     The burden on Defendants, as large corporations with national operations, is minimal.

27.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in Columbia County, New York, within this District.

28.     Plaintiff was injured in Columbia County by the defective product sold by the Wal-Mart Defendants and designed by Horizon Group USA, Inc.

## FACTUAL ALLEGATIONS

29.     On or about July 21, 2024, infant Plaintiff N.H., a minor, visited the Walmart Supercenter #2097 store located at 460 Fairview Avenue, Hudson, New York, in Columbia County, accompanied by her mother.

30.     At the store, Plaintiff N.H. and her mother purchased a product known as the "You*niverse Ultimate Crystal Growing Laboratory Kit," hereinafter referred to as "the Product."

31.     The Product is marked with the style number "STYLE 200953H" and is specifically marketed and intended for sale to children, as indicated on its packaging with the marking "8+," suggesting it is suitable for children aged 8 and older.

32.     The Product was designed, manufactured, and distributed by Defendant Horizon Group USA, Inc. for sale to the general public, including through the Wal-Mart Defendants, with the intent that it be used by children for educational and recreational purposes.

33.     The Product includes the following components: a reusable storage case with workstation lid, a 3D mermaid tail, a 3D shooting star, 6 premium charms, 20 fuzzy sticks 12 inches (30.4 cm) each, 3 alum powders net weight 6 ounces (170 g) each, 2 metallic paints net 0.10 fluid ounces (3 mL) each, 1 paint brush, 3 color droppers net 0.09 fluid ounces (2.6 mL) each, 2 wooden sticks, 1 small plastic beaker, 3 glitter packets 0.035 ounces (1 g) each, 5 skeins of sparkle elastic cord 1 yard (91.4 cm) each, 100 metallic beads, 450 colorful accent beads, 1 skein of wax cord 1 yard (91.4 cm), 1 white glue tube net 0.2 fluid ounces (6 mL), 1 palette, 1 educational fact poster, and "easy-to-follow instructions."

34.     The Product was sold by Defendants Wal-Mart, Inc., Wal-Mart Stores East, Inc., and Walmart Supercenter #2097 (collectively, "Wal-Mart Defendants") at their Hudson, New York store, which is located within Columbia County.

35. The incident occurred at Plaintiff N.H. Grandmother's home in Hudson, New York, within Columbia County, following the purchase on July 21, 2024, and use of the Product on July 23, 2024.

36. On July 23, 2024, while following the instructions, Plaintiff N.H., and her mother started to use the product.

37. Plaintiff informed her mother that she wanted to use the kit to grow crystals on the charm, which took the form of a rainbow with a star on one end.

38. As informed by the instructions Plaintiff and her mother looked for a container of sufficient size to fit the aforementioned charm.

39. Photographs of the instructions, included with this complaint, confirm that they fail to designate a specific, heat-resistant container for transferring the boiling water mixture, instead using vague language to "transfer to a container to cool" without further guidance.

40. The Product included only a small plastic beaker as a container for measuring 820 ml of water, no additional container was provided or specified in the instructions to put the boiled mixture in for the crystals to grow.

41. The Plaintiff then selected a rigid plastic peanut container, due to not only its size but the thick plastic nature of the container and its rigidity, and as the instructions are silent on what type of container to use.

42. This Peanut Jar, hereinafter "the container," was placed on the countertop.

43. The instructions, provided by Horizon Group USA, Inc. with the Product, directed users to mix the aluminum powders with boiling water and then transfer the boiling water mixture to an unspecified container, the consumer must provide, to "cool" for the crystal-growing process.

6

44.    The Plaintiff's mother then proceeded to boil water and transferred the boiling water/aluminum mixture to "the container".

45.    This process was repeated several times to get the requisite amount of the mixture, as laid out by the instructions, into the chosen container.

46.    On approximately the second or third trip to the kettle, about twenty to thirty seconds later, the Plaintiff's mother heard a loud scream coming from behind her.

47.    "The container" that the Plaintiff and her mother were transferring the boiling water mixture into had spontaneously and severely deformed at its base, and tipped over towards the Plaintiff, who was sitting on a stool at the counter facing the container.

48.    Due to the container's spontaneous deformation, it tipped towards the Plaintiff and sent the boiling water and chemical mixture onto and over the counter, dousing the Plaintiff's hands, lap, legs and genital area.

49.    At first, the Plaintiff's mother was unsure of what had happened, but on rushing to her child's aid the Plaintiff's mother noticed that the region below the Plaintiff's navel was wet, and turned the Plaintiff away from the counter.

50.    The Plaintiff's mother then instantly pulled the garments from her daughter's body (i.e., underwear, shorts, etc.) and, in doing so, noticed that the Plaintiff's skin on her hands and inner thighs were sluffing off, due to burns.

51.    The Plaintiff's mother then rushed the Plaintiff into the shower and put the Plaintiff under cold water in an attempt to lessen the burns.

52.    As a result of the spill, Plaintiff suffered severe second and third degree burns to her hands, inner thighs, and genital areas.

53.     The burns sustained by Plaintiff N.H. required immediate medical attention, including emergency treatment and ongoing care, resulting in significant physical pain, permanent scarring, emotional distress, and substantial medical expenses.

54.     Plaintiff's mother then called a local urgent care and arrived there shortly after.

55.     While at the urgent care, the mother was informed that they needed to go to the closest burn center, the Westchester Medical Center.

56.     A discussion ensued as to whether to take the Plaintiff by conventional ambulance or via air ambulance (helicopter).

57.     The Product's packaging and instructions lack adequate warnings about the risks of transferring boiling water without a specified, heat-resistant container, particularly for children aged 8 and older, despite the "8+" marketing.

58.     The Wal-Mart Defendants placed the Product into the stream of commerce in New York without ensuring its safety for intended use by children, including the provision of clear transfer instructions, with respect to boiling water and the type of receptacle to be used to hold the boiling mixture.

59.     Horizon Group USA, Inc. designed and distributed the Product with knowledge that it would be sold to children in New York, including through the Wal-Mart Defendants' Hudson store, without addressing the hazards of safely transferring the boiling water mixture without specifying a proper container.

60.     The defective design of the Product, including the inadequate instructions for transferring boiling water, directly contributed to the incident and Plaintiff N.H.'s injuries.

61.     As of today, September 25, 2025, Plaintiff N.H. continues to suffer from the physical and emotional effects of the burns, with medical costs exceeding $75,000.

62.    Defendants Wal-Mart, Inc., Wal-Mart Stores East, Inc., Walmart Supercenter #2097, and Horizon Group USA, Inc. each participated in specific aspects of the Product's lifecycle, including advertising the Product through in-store displays and promotional materials at the Hudson, New York store, selling it to Plaintiff N.H. on July 21, 2024, designing its components, manufacturing it, and distributing it for sale to children in New York.

63.    The Product, as sold to Plaintiff N.H. on July 21, 2024, lacked adequate warning labels or instructions specifying the risks of severe burns from transferring boiling water without a specified container, a deficiency observed in the packaging and instructions.

64.    A reasonable consumer, including Plaintiff N.H.'s mother who purchased the Product, would interpret the "8+" marking and educational branding as indicating the Product was safe for a child of Plaintiff N.H.'s age to use under typical supervision, without anticipating the burn hazard posed by the vague transfer and/or container selection instructions.

65.    At the time of manufacture, the Product's design, requiring transfer of boiling water into an unspecified container, created a foreseeable and substantial risk of burns, as evidenced by the incident of July 23, 2024, yet no specific warnings addressed this danger.

66.    The Product's instructions, which failed to specify a heat-resistant container for transferring the boiling water mixture on July 23, 2024, rendered the Product unfit for its intended use by children, leading to the spill that injured Plaintiff N.H.

67.    Defendants Wal-Mart, Inc., Wal-Mart Stores East, Inc., Walmart Supercenter #2097, and Horizon Group USA, Inc. are each liable for Plaintiff N.H.'s injuries because they failed to include adequate warnings and instructions about the burn risk from transferring boiling water, with the Wal-Mart Defendants selling the Product without modification and Horizon Group USA, Inc. designing it with vague instructions and warnings.

68.     Defendants had a post-manufacture, post-distribution, and/or post-sale duty to warn consumers about the burn risk, which became apparent based on the Product's design requiring boiling water transfer, a risk foreseeable at the time of sale on July 21, 2024.

69.     Following the Product's initial sale, Defendants were or should have been aware of evidence, including potential consumer complaints about similar burn incidents and industry safety standards for children's science kits, indicating the Product's propensity to cause severe burns when used as instructed.

70.     Defendants breached this post-sale duty by not issuing updated warnings or instructions to consumers, including Plaintiff N.H., after July 21, 2024, despite the foreseeable risk of burns from the unspecified container transfer, as demonstrated by the incident.

71.     Defendants failed to exercise reasonable care by not providing post-sale corrective instructions, such as recommending a heat-resistant container for transfer to consumers like Plaintiff N.H., increasing the likelihood of harm from the Product's use after its sale.

72.     As a direct and proximate result of Defendants' failure to provide adequate pre-sale and post-sale warnings and instructions, Plaintiff N.H. suffered severe burns to her hands, inner thighs, and genital areas on July 23, 2024, leading to emergency medical treatment, ongoing care, permanent scarring, emotional distress, and medical expenses exceeding $75,000 as of September 25, 2025.

## CAUSES OF ACTION AND DAMAGES

75.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs of the Complaint herein as if fully set forth herein.

76.     Plaintiff N.H. suffered serious and severe burn injuries to her hands, inner thighs, and genital areas on July 23, 2024, as a direct and proximate result of the "You*niverse Ultimate Crystal Growing Laboratory Kit" (the "Product") imported, manufactured, marketed, distributed,

and/or sold by Defendants Wal-Mart, Inc., Wal-Mart Stores East, Inc., Walmart Supercenter #2097 (collectively, "Wal-Mart Defendants"), and Horizon Group USA, Inc.

77.    Defendants failed to adequately warn Plaintiff N.H. and her mother that the Product:

a.    Was defectively designed or manufactured, as evidenced by the instructions' failure to specify a safe container for transferring boiling water on July 23, 2024.

b.    Posed significant risks of burn injuries when used as instructed.

c.    Was sold without sufficient safety testing, as indicated by the absence of guidance for a heat-resistant container.

d.    Had inadequate instructions, as the directive to "transfer to a container to cool" lacked specificity, leading to the spill on July 23, 2024.

e.    Had caused or contributed to similar injuries, based on the foreseeable risk of burns from the unspecified transfer, as demonstrated by the incident.

78.    Each Defendant wrongfully contributed to Plaintiff N.H.'s use of the Product under the belief it was safe for a child, as promoted by the "8+" marking, which led to the conditions—transferring boiling water to an unsuitable container—that caused her burn injuries on July 23, 2024.

79.    Plaintiff N.H. has incurred and will continue to incur significant general damages, including pain, suffering, and emotional distress, and special damages, including medical expenses exceeding $75,000 as of September 25, 2025, in an amount to be determined by the jury at trial.

80.    Upon information and belief, the Product's components, including the instructions, were sourced from entities not subject to service of process or jurisdiction of this Court, to the

extent such entities exist, though Defendants remain liable for its design and distribution.

81. Defendants, as sellers, manufacturers, designers, and/or distributors of the Product, are jointly and severally liable for the damage caused to Plaintiff N.H. under New York law, including principles of strict liability and negligence applicable in products liability cases.

## AS TO A FIRST CAUSE OF ACTION FAILURE TO WARN

82. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of the Complaint herein as if fully set forth herein.

83. Defendants Wal-Mart, Inc., Wal-Mart Stores East, Inc., Walmart Supercenter #2097, and Horizon Group USA, Inc. participated in the advertisement, sale, design, manufacture, production, wholesale, and/or distribution of the Product that caused Plaintiff N.H.'s burn injuries on July 23, 2024.

84. The Product, as sold to Plaintiff N.H. on July 23, 2024, lacked adequate warning labels or instructions specifying the risks of severe burns from transferring boiling water to an unspecified container, a deficiency observed in the packaging and instructions.

85. A reasonable consumer, including Plaintiff N.H.'s mother who purchased the Product, would interpret the "8+" marking and educational branding as indicating the Product was safe for a child of Plaintiff N.H.'s age to use under typical supervision, without anticipating the burn hazard posed by the vague transfer instructions.

86. At the time of manufacture in 2024, the Product's design, requiring transfer of a boiling water mixture into an unspecified container, created a foreseeable risk of burns, as evidenced by the spill on July 23, 2024, yet no specific warnings addressed this danger.

87. On July 23, 2024, Plaintiff N.H. and her mother used the Product at Plaintiff's grandmother's home in Hudson, New York, by following the instructions to mix boiling water with alum powders and transfer the mixture, an action consistent with the Product's advertised

educational and recreational purpose for children.

88.    The Product's instructions failed to specify a heat-resistant container and/or warn against using specific kinds of containers for transferring the boiling water mixture on July 23, 2024, rendering the Product unfit for its intended use by children, leading to the spill that injured Plaintiff N.H.

89.    Had the Product included warnings such as "Transfer boiling water only to a heat-resistant container" or "use heat safe plastic and/or glass," Plaintiff N.H.'s mother would have used a different container, preventing the spill and burns on July 23, 2024.

90.    Defendants are liable for Plaintiff N.H.'s injuries because they failed to include adequate instructions and warnings about the burn risk from transferring the boiling water mixture, with the Wal-Mart Defendants selling the Product without modification and Horizon Group USA, Inc. inadequately warning its end users of the potential hazards that the product poses.

91.    Defendants had a post-manufacture, post-distribution, and/or post-sale duty to warn consumers about the burn risk, which became apparent based on the Product's design requiring boiling water transfer, a risk foreseeable at the time of sale on July 21, 2024.

92.    Prior to the Product's initial sale in 2024, Defendants were or should have been aware of evidence, including potential consumer complaints about similar burn incidents and industry safety standards for children's science kits and/or similar products which do include adequate warnings, indicating to the Defendant the Product's propensity and/or ability to cause severe burns when used as instructed.

93.    Defendants breached this post-sale duty by not issuing updated warnings or instructions to consumers, including Plaintiff N.H., after July 23, 2024, despite the foreseeable

risk of burns from the unspecified container transfer, as demonstrated by the incident.

94.    Defendants failed to exercise reasonable care by not providing post-sale corrective instructions, such as recommending a "heat-resistant container" for transfer of boiling mixture, to New York consumers like Plaintiff N.H., increasing the likelihood of harm from the Product's use after its sale.

95.    As a direct and proximate result of Defendants' failure to provide adequate pre-sale and post-sale warnings and instructions, Plaintiff N.H. suffered severe burns to her hands, inner thighs, and genital areas on July 23, 2024, leading to emergency medical treatment, ongoing care, permanent scarring, emotional distress, and medical expenses exceeding $75,000 as of July 16, 2025.

## AS TO A SECOND CAUSE OF ACTION
## DESIGN DEFECT

96.    Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs of the Complaint herein with the same force and effect as if fully set forth herein.

97.    On July 23, 2024, Plaintiff N.H. used the Product for its intended educational purpose, a use foreseeable to Defendants, yet the Product's failure to provide a safe container and/or its defective instructions caused her severe burns.

98.    The Product purchased by Plaintiff N.H. was unreasonably dangerous and unfit for its intended use by children, as the non-inclusion and/or lack of a specified container led to the burn injuries beyond what an ordinary consumer would anticipate.

99.    When Defendants designed, imported, distributed, and/or manufactured the Product sold to Plaintiff N.H. on July 21, 2024, it was not reasonably safe, as the instructions' failure to specify and/or provide a safe container for use with the boiling water mixture that led to the incident that injured Plaintiff.

100. The Product was far more dangerous than an ordinary consumer would expect, given its "8+" marketing to children, the severity of Plaintiff N.H.'s burns, and the feasibility of specifying (in the product's print instructions) and/or supplying a heat-resistant container, which was not provided.

101. Defendants cannot assure that their design and manufacturing processes produced a Product free from the risk of dangerous spills during or after transfer, as the Product did not provide a safe container and/or its instructions were vague and non-specific which directly led to the burn incident on July 23, 2024.

102. As a direct and proximate result of the design and/or manufacturing defects in the Product, including the inadequate instructions, Plaintiff N.H. suffered severe burns and related injuries, as described in paragraphs above.

**AS TO A THIRD CAUSE OF ACTION
MANUFACTURING DEFECT**

103. Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs of the Complaint herein with the same force and effect as if fully set forth herein.

104. On July 23, 2024, Plaintiff N.H. used the Product for its intended educational purpose, a use foreseeable to Defendants, yet the Product's failure to provide a safe container and/or its defective instructions caused her severe burns.

105. The Product purchased by Plaintiff N.H. was unreasonably dangerous and unfit for its intended use by children, as the non-inclusion and/or lack of a specified container led to the burn injuries beyond what an ordinary consumer would anticipate.

106. When Defendants designed, imported, distributed, and/or manufactured the Product sold to Plaintiff N.H. on July 21, 2024, it was not reasonably safe, as the instructions' failure to specify and/or provide a safe container for use with boiling water led to the incident that injured

Plaintiff.

107.   The Product was far more dangerous than an ordinary consumer would expect, given its "8+" marketing to children, the severity of Plaintiff N.H.'s burns, and the feasibility of specifying (in the Product's print instructions) and/or supplying a heat-resistant container, which neither were provided.

108.   Defendants cannot assure that their design and manufacturing processes produced a Product free from the risk of dangerous spills during or after transfer, as the Product did not provide a safe container and/or its instructions were vague and non-specific which directly led to the burn incident on July 23, 2024.

109.   As a direct and proximate result of the design and/or manufacturing defects in the Product, including the inadequate instructions, Plaintiff N.H. suffered severe burns and related injuries, as described in paragraphs above.

**AS TO A FOURTH CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY UNDER NEW YORK COMMON LAW**

110.   Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs of the Complaint herein with the same force and effect as if fully set forth herein.

111.   Under New York common law, a product is defectively designed if it is unreasonably dangerous for its intended use when it leaves the seller's hands, as with the Product's instructions, which failed to specify a safe container and led to Plaintiff N.H.'s burns on July 23, 2024, contrary to what a reasonable consumer would expect.

112.   The Product's utility as an educational kit for children does not outweigh the risk of severe burns, as demonstrated by Plaintiff N.H.'s injuries from the unspecified transfer container.

113.   The recreational benefit of the Product is overshadowed by the inherent danger of severe burns, making its introduction into the stream of commerce unjustifiable without clearer

instructions.

114. Defendants knew or should have known that the Product's utility did not outweigh the burn risk from the transfer of boiling water mixture to an unspecified container, and even with warnings (which were absent), the instructional flaw made the Product unreasonably dangerous, a fact evident from the July 23, 2024, incident.

115. The Product was widely sold in New York, including at the Hudson, NY store, exposing unsuspecting consumers like Plaintiff N.H. to the burn hazard.

116. The Product's limited educational value to Plaintiff N.H. was far outweighed by the risk of severe burns, which materialized on July 23, 2024.

117. The Product had a high probability of causing burn injuries, as shown by the spill due to unspecified transfer instructions and Plaintiff N.H.'s injuries, with prior incidents or testing data reasonably knowable to Defendants.

118. Defendants could have implemented safer design measures, such as specifying and/or including a heat-resistant container with the instructions, at a reasonable cost to prevent the July 23, 2024, spill.

119. Defendants had feasible options, including clearer transfer instructions or providing a safe container, to make the Product safer while retaining its core function, yet chose not to implement them.

120. Upon information and belief, Defendants concealed the Product's burn risk by omitting instructions for a safe transfer container, preventing Plaintiff N.H. from being aware of the hazard on July 23, 2024.

121. Defendants could have spread the cost of instructional improvements and a proper container across their broad consumer base but prioritized profit over safety, as inferred from the

17

lack of specific guidance and equipment.

122. The Product's utility was far outweighed by the significant risk of severe burns, as proven by Plaintiff N.H.'s injuries on July 23, 2024.

123. Defendants knowingly marketed the Product despite the documented burn risk from the unspecified transfer of boiling water mixture and proper container, prioritizing market share over safety.

124. Defendants' disregard for consumer safety, by ignoring the transfer hazard, proximately caused Plaintiff N.H.'s burns on July 23, 2024.

<strong><u>AS TO A FIFTH CAUSE OF ACTION:<br>BREACH OF IMPLIED WARRANTY</u></strong>

125. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of the Complaint herein with the same force and effect as if fully set forth herein.

126. Defendants Wal-Mart, Inc., Wal-Mart Stores East, Inc., Walmart Supercenter #2097, and Horizon Group USA, Inc. impliedly warranted that the Product was reasonably safe for its intended educational and recreational use by children, as promoted by the "8+" marking.

127. These warranties were part of the basis for the bargain when Plaintiff N.H.'s mother purchased the Product on July 23, 2024, at the Hudson store.

128. As a consumer in New York, Plaintiff N.H. was a foreseeable end user and third-party beneficiary of the warranties implied through the Product's distribution chain.

129. The implied warranties included that the Product was safe and free from unreasonable risks of burns, representations relied upon during the purchase.

130. The warranties were untrue, as the Product's instructions failed to specify a safe container, leading to Plaintiff N.H.'s burns on July 23, 2024, contrary to its advertised safety.

131. As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff N.H. suffered severe burn injuries, as described above.

**AS TO A SIXTH CAUSE OF ACTION:**
**NEGLIGENCE**

132.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of the Complaint herein with the same force and effect as if fully set forth herein.

133.  Defendants Wal-Mart, Inc., Wal-Mart Stores East, Inc., Walmart Supercenter #2097, and Horizon Group USA, Inc. were negligent in the Product's design, manufacture, testing, marketing, distribution, and sale by failing to include specific transfer instructions, proper container and adequate warnings.

134.  Defendants were negligent in distributing and selling the Product without adequate warnings—such as warning regarding the burn risk from transferring boiling water to an unspecified container—and/or items which could have prevented the facts and circumstances which lead to the Plaintiff's injuries—such as a heat safe container—as evidenced by the spill on July 23, 2024.

135.  Defendants knew or should have known that the Product was unreasonably dangerous for its intended use by children, as the unspecified transfer caused Plaintiff N.H.'s burns.

136.  Defendants sold the Product without adequate safety verification and warnings as shown by the lack of guidance for a heat-resistant container despite the boiling water transfer requirement.

137.  Defendants acted with reckless disregard by selling the Product with misleading "8+" marketing, omitting key safety information about the transfer hazard of boiling water, and failing to warn Plaintiff N.H. of the burn risk.

138.  Defendants' breach of duty was reckless, as they omitted proper transfer instructions despite the foreseeable risk of injury, as demonstrated by the July 23, 2024, incident.

139.  Upon information and belief, Defendants prioritized profit margins by omitting transfer safety disclosures, knowing such information would reduce sales of the Product.

140.  Defendants' negligence was the direct and proximate cause of Plaintiff N.H.'s severe burns, pain, suffering, and medical expenses, as detailed above.

**AS TO A SEVENTH CAUSE OF ACTION:**
**NEGLIGENT MISREPRESENTATION**

141.  Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs of the Complaint herein with the same force and effect as if fully set forth herein.

142.  Defendants Wal-Mart, Inc., Wal-Mart Stores East, Inc., Walmart Supercenter #2097, and Horizon Group USA, Inc. had a pecuniary interest in designing, manufacturing, distributing, advertising, and selling the Product, as evidenced by its sale to Plaintiff N.H.'s mother for profit at the Walmart Supercenter #2097 in Hudson, New York, on July 21, 2024, in a consumer transaction for educational and recreational use by a child, as promoted by Defendants through in-store displays, packaging, and marketing materials targeting families and children.

143.  Defendants, as designers, manufacturers, and/or sellers of children's science kits involving hazardous materials like boiling water and alum powders, held a position of superior expertise, aware of industry standards requiring explicit warnings for burn risks and clear instructions for handling hot liquids in products intended for children, creating a special relationship imposing a duty to supply accurate and complete information to consumers, including parents purchasing for children marked as suitable for ages "8+," to ensure safe use and prevent foreseeable injuries.

144. This special relationship arose from Defendants' role in the supply chain, where Horizon Group USA, Inc. designed and provided the Product's components and instructions, and the Wal-Mart Defendants distributed and sold it directly to consumers, placing them in a position of trust where buyers like Plaintiff N.H.'s mother reasonably relied on their expertise to provide non-misleading guidance, especially given the Product's educational branding as a safe, child-friendly crystal-growing laboratory kit.

145. Defendants negligently supplied incomplete and misleading information about the Product's safe usage, including the packaging's "8+" marking, "easy-to-follow instructions" claim, and descriptions such as "reusable storage case with workstation lid" and "educational fact poster," which collectively implied the Product was reasonably safe for supervised child use without significant burn risks from the transfer step or the need for specialized equipment beyond what was provided.

146. Specifically, the instructions' vague directive to "transfer to a container to cool" (as observed in the attached instructions and photographs), omitted critical guidance on using only heat-resistant containers (e.g., glass or metal) or warnings against plastic ones, despite the Product's inclusion of only a small plastic beaker for measuring water to boil, and the foreseeable risk of injury when used as intended by children following the steps to mix alum powders with boiling water for crystal growth on charms like the 3D mermaid tail or shooting star.

147. Defendants failed to exercise reasonable care in communicating this information, as they knew or should have known—from product design processes, safety testing protocols, or reported burn incidents in similar children's science kits involving hot liquids—that non-heat-resistant containers, such as the thick plastic peanut jar selected by Plaintiff N.H.'s mother due to its size and apparent durability, could deform under heat and spill boiling water, yet provided no

21

specific guidance in the instructions, rendering the instructions inadequate and packaging misleading for safe use by children on July 23, 2024, and failing to address the heightened risks for minors under adult supervision.

148. Upon information and belief, based on the Product's design requiring multiple transfers of boiling water to accumulate the necessary volume, and industry knowledge of thermal deformation in common household plastics, Defendants negligently omitted these details, prioritizing appealing marketing over comprehensive safety disclosures.

149. Plaintiff N.H. was among the class of children and parents for whose benefit Defendants supplied this information, as indicated by the "8+" marketing, educational branding, and the Product's inclusion of child-oriented components like premium charms, fuzzy sticks, glitter packets, and sparkle elastic cord, all intended to guide safe, recreational use of the Product in home settings like Plaintiff N.H.'s grandmother's residence in Hudson, New York.

150. These incomplete representations were part of Defendants' marketing strategy and instructional materials, intended to influence consumer transactions by promoting the Product as safe, user-friendly, and suitable for New York consumers like Plaintiff N.H., as shown by its prominent display and sale at the Walmart-Hudson store on July 21, 2024, where the packaging's visuals and text encouraged purchases without highlighting the latent dangers.

151. Defendants coordinated their efforts in this regard, with Horizon Group USA, Inc. supplying the misleading packaging and instructions to the Wal-Mart Defendants, who then placed the Product into the stream of commerce without additional warnings or modifications, thereby jointly contributing to the negligent dissemination of incomplete information to the public and Plaintiffs.

152.    Plaintiff N.H.'s mother justifiably relied on Defendants' representations, believing based on the "8+" marking, lack of explicit burn warnings, and the overall educational presentation that the Product was safe for N.H.'s supervised use, that all necessary safety precautions were included in the instructions, and that a common household container like the thick plastic peanut jar—chosen for its size to fit the charm and its perceived sturdiness—was suitable for transferring the boiling water mixture, as no instructions cautioned otherwise or specified alternatives.

153.    This reliance was reasonable given the Product's targeting at children and families, the absence of any red flags on the packaging (such as "Caution: Hot Liquids – Use Heat-Resistant Containers Only"), and the mother's adherence to the provided steps, including boiling water and transferring it to the jar placed on the countertop, where Plaintiff N.H. was seated on a stool.

154.    Had Defendants provided complete and accurate information, such as explicit warnings like "Use only heat-resistant, glass, and/ or metal containers for boiling water transfer to avoid deformation and spills" or "Do not use plastic containers for boiling mixtures," along with explanations of the risks, Plaintiff N.H.'s mother would have selected a different, safer container, increased supervision during the transfer process, or avoided purchasing and using the Product altogether, thereby preventing the jar's spontaneous deformation at its base approximately 20-30 seconds after the transfer, the subsequent tip-over, and the spill of the boiling water and chemical mixture onto Plaintiff N.H.'s lap, legs, and genital aeras, on July 23, 2024.

155.    As a direct and proximate result of Defendants' negligent supply of incomplete and misleading information, Plaintiff N.H. suffered severe burns to her hands, inner thighs, and genital areas on July 23, 2024, requiring immediate actions by her mother such as removing wet garments, noting skin sloughing off, rushing to a cold shower, and seeking medical attention at a local urgent care, followed by referral to the Westchester Medical Center burn center, discussions of ambulance

or air transport, ongoing treatment, permanent scarring, emotional distress, loss of enjoyment of life, and medical expenses exceeding $75,000 as of September 18, 2025.

## DAMAGES

156.    Plaintiff N.H. claims actual damages in the amount of $50,000,000 and/or an amount to be awarded by a jury, for pecuniary losses, including medical expenses, which exceeds $75,000 as of September 25, 2025, pain and suffering, emotional distress, permanent scarring, loss of enjoyment of life, and other damages recoverable under New York law due to Defendants' wrongful acts and omissions causing her burn injuries.

157.    Under New York law, a cause of action for personal injury is established where a defendant's negligence or wrongful act, such as the Product's inadequate instructions, caused the claimant's injury, as occurred with Plaintiff N.H. on July 23, 2024.

158.    The Product's defective instructions, failing to provide and/or specify a safe container for transfer, directly caused Plaintiff N.H.'s burn injuries, entitling her to recover all allowable damages under New York law.

159.    Defendants owed a duty of care to Plaintiff N.H. to design, manufacture, distribute, and sell a Product with safe and appropriate warnings and/or instructions for its intended use by children, which they breached by placing a Product with vague transfer guidance into the stream of commerce on July 21, 2024.

160.    Defendants did not properly warn Plaintiff N.H. that transferring boiling water as instructed could lead to severe burns, a risk realized on July 23, 2024.

161.    Defendants obscured vital safety information, such as the need for a heat-resistant container for transfer, leading Plaintiff N.H.'s mother to believe the Product was safe when purchased on July 21, 2024.

162.    As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff N.H. sustained injuries causing significant physical, emotional, and economic harm, detailed above.

## PUNITIVE DAMAGES

156.    The intentional and willful conduct of Defendants, including concealing the Product's burn risk from unspecified transfer to maximize profits despite the foreseeable hazard, involved high moral culpability and reckless disregard for the safety of consumers like Plaintiff N.H., justifying punitive damages in an amount to be determined by the jury.

**WHEREFORE, Plaintiff**, respectfully requests that this Court impanel a jury to hear this case, and upon the conclusion of trial, enter Judgment against Defendants:

a.    **Awarding general and special damages** in an amount to be proven at trial, including but not limited to medical expenses, pain and/or suffering, mental anguish, and loss of enjoyment of life;

b.    **Awarding reasonable attorneys' fees and costs**, including all disbursements and litigation expenses;

c.    **Awarding punitive damages** to the full extent allowed by New York law; and

d.    **Awarding such other and further relief** as this Court deems just and proper under the circumstances.

DATED:    Buffalo, New York
September 26, 2025

*/s/ Keith R. Vona*

Keith R. Vona, Esq.
RICHMOND VONA, LLC
Attorneys for Plaintiffs
192 Seneca Street, Suite 200
Buffalo, New York 14204
(716) 500-5678
Keith@richmondvona.com